WILLIAM G. MOREY *vs.* MAINE CENTRAL RAILROAD COMPANY.

Androscoggin.    Opinion June 28, 1928.

*Locke, Perkins & Williamson,* for plaintiff.
*White & Carter,*
*Perkins & Weeks,* for defendant.

SITTING: WILSON, C. J., PHILBROOK, DUNN, DEASY, STURGIS, JJ.

STURGIS, J. The plaintiff, employed by the defendant railroad as head brakeman in a ring crew operating extra freight trains between Bangor and Waterville, on the morning of February 2, 1924, fell from a flat car loaded with lumber and received injuries which resulted in the loss of his left leg. The train was engaged in interstate commerce, and this action to recover damages for that injury is brought under the Federal Employers' Liability Act.

This case has already received the consideration of this Court on a general motion filed after verdict for the plaintiff at the first trial. *Morey* v. *Railroad,* 125 Maine, 272. At a new trial, upon the defendant's motion, the presiding Justice ordered an involuntary nonsuit, and the case is now here on exceptions taken to that order.

Upon the issues raised by the original pleadings, the evidence brought forward in this record is in all material respects the same as that considered upon the motion. No reason, therefore, appears for a reversal of the previous decision of this Court, *Bryant* v. *Paper Co.,* 103 Maine, 32, 35, and upon the first count of the declaration the ruling below must be sustained.

At the second trial, the plaintiff amended his declaration by the addition of a count in which he attributes his injury to the failure of the defendant to remove snow and ice from the lumber from which he fell, thereby failing (to use the language of the plaintiff) "to provide the plaintiff a safe place to work."

The defendant pleads the general issue, and in its brief statement sets up special pleas of contributory negligence and assumption of risk. The question here to be determined is whether, taking the evidence most favorably for the plaintiff, a verdict on the second count in the declaration could be permitted to stand. *King* v. *The Grocery Co.,* 126 Maine, 202; *Whittemore* v. *Merrill,* 87 Maine, 456.

192

At the trial the plaintiff introduced his own testimony and four photographs of the car from which he fell, and with certain admissions stipulated upon the record rested. The evidence thus limited supports a finding that on the morning of February 2, 1924, the plaintiff was employed as a brakeman by the defendant Company. He had been in their service since May, 1923, and was familiar with his duties, the rules of the road, and the usual incidents of the run which he was making on the morning he was injured. His crew arrived at Northern Maine Junction at about 6 A.M., and took charge of the west bound freight already made up. The train consisted of fifty or sixty loaded cars, including, near the forward end of the train, four flat cars of lumber, the last one being a Bangor and Aroostook car, No. 70131.

At Newport, the first station west of the Junction, as the train pulled out of the yards, the plaintiff left the engine and walked down the train to relay the conductor's signal to the engineer, climbed to the top of a box car, relayed the signal, and started forward over the cars. When he reached the lumber car 70131 he went along the top of the load and started down over the forward end, and says that in attempting to get down over the load of lumber he stepped on the end of a piece of timber which was covered with snow, slipped and fell beneath the car.

The photographs, Exhibits 1 and 4, portraying the car in question and the forward end of its load, show that the lumber was of varying lengths and sizes, with dimension stock piled at the bottom and boards on top, and was so loaded that a recess was left on the right forward end of the car where the hand-brake wheel stood. About half way down this end of the load two 2 x 4 joists projected forward, and on these timbers snow had accumulated. Above in two places there were patches of snow on the edges of joists and boards, but none of these patches appear to be in places where a person could find a foothold.

The car was loaded as the varying lengths and sizes of the lumber and the operation of the hand-brake made it necessary, and there is no evidence that the snow-covered lumber ends were purposely left projecting as a means of descent from the load. No rule of the road compelled the plaintiff, in the performance of his duties, to go forward to the engine over the cars. It was customary

for brakemen to do it and it was not forbidden, but it was not required. On this occasion it was not even necessary from a practical viewpoint, as the train was moving slowly and it was entirely possible for the plaintiff to drop down from the box car, run along the train, and catch the engine before the train picked up speed.

Upon these facts the Court is not of opinion that the evidence sent up in the record shows negligence on the part of the defendant carrier. A railroad is not an insurer of the safety of the place which it furnishes for the use of its employees. Its duty is to use due care to provide a reasonably safe place, and having done so it fulfills its legal obligation to its servant. *Morey* v. *The Railroad*, 125 Maine, 272; *Sheaf* v. *Huff*, 119 Maine, 469; *Elliott* v. *Sawyer*, 107 Maine, 195, 201.

The evidence brings this car of lumber from which the plaintiff fell, down from Northern Maine in February, a section of the State and season of the year marked by low temperatures and frequent falls of snow. Railroads are there operated subject to all the incidents of such climatic conditions, and open cars and their loads of necessity at times accumulate snow and ice. In safeguarding its employees from injury, the railroad is bound to use due care to make its cars and their loads reasonably safe for the passage of its brakemen, but it is not bound to anticipate and guard against every possible danger, or such as no prudent person would reasonably expect to happen. *Cowell* v. *The Woolen Co.*, 97 Maine, 543, 546.

The car or the lumber on it from which the plaintiff fell had undoubtedly passed through a storm and become partially covered with snow, and here and there in isolated spots patches remained, not in places of usual travel by train operatives, but in the recesses of the load where it could not be reasonably expected foothold would be sought. It was possible that a brakeman might seek it out, and in stepping on it slip, but that danger, we think, was beyond the realm of reasonable probability, and to impose liability upon the railroad for a failure to forsee and guard against so remote a possibility would be to charge it as an insurer, which under the law it is not. *Morey* v. *The Railroad*, supra; *Sheaf* v. *Huff*, supra.

The plaintiff's failure to prove negligence upon the part of the

defendant justified the order of nonsuit, and a discussion of the application of the doctrines of the assumption of risk and contributory negligence is unnecessary.

*Exceptions overruled.*