Esther GUERRERO, Plaintiff in Error,

v.

Charles E. TIBLOW, Defendant in Error.

No. 39891.

Supreme Court of Oklahoma.

April 9, 1963.

Rehearing Denied June 4, 1963.

William P. Huckin, Jr., Tulsa, for plaintiff in error.

Alfred B. Knight, Tulsa, for defendant in error.

BERRY, Justice.

Esther Guerrero, hereinafter called "plaintiff", filed this action against Charles E. Tiblow, hereinafter called "defendant", to recover damages for personal injuries. The trial court sustained defendant's demurrer to the evidence and plaintiff has appealed.

In plaintiff's petition the allegations of negligence charged against the defendant were substantially as follows: (a) The defendant negligently ran into plaintiff without exercising reasonable care to avoid her; (b) The defendant was driving at such a speed that he could not stop within the assured clear distance ahead; and (c) The defendant drove his vehicle in such a manner as to amount to reckless driving.

Defendant's answer was substantially that he was not guilty of negligence; if he were guilty of negligence, then the plaintiff was guilty of contributory negligence and that the accident was unavoidable.

After plaintiff presented her evidence, defendant demurred and the trial court sustained the demurrer on the grounds that "the plaintiff has failed to prove actionable negligence" and also found that "the evidence by the plaintiff has shown her contributorily negligent to this accident" and that the matter became a "question of law."

From order of trial court overruling plaintiff's motion for new trial, plaintiff has perfected this appeal.

Plaintiff's evidence, though conflicting, was substantially as follows:

After nightfall, approximately 8 p. m., on March 2, 1960, plaintiff was struck by a car owned and operated by defendant while standing on the right (north) portion of the roadbed 72 feet west of a railroad track on a county road leading west from the city limits of Skiatook. There were then four to six inches of fresh snow covering the hard surfaced roadbed.

Plaintiff had previously thereto been riding in the back seat of a car owned by plaintiff and Miss Jerry Adair. Miss Adair had been driving and had parked the car facing west at a position 65′ (from rear bumper) west of the mentioned railroad track. The right side (north side) of their car was approximately 7′ from the right edge of the roadbed. The width of their car was 5½′ to 6′. The width of the roadbed was 16′ and on each side thereof it dropped off into a borrow ditch.

The railroad track was built on a higher elevation than the roads leading to and from. On each side the road sloped down-

ward from the track. West of the track the road sloped downward for approximately 150 feet, or continued to slope downward from the point of the accident approximately another 78 feet.

Miss Adair had stopped their car in order for her nephew, Dennis, to look for a rabbit which he had previously shot. Dennis, in his search for the rabbit, yelled for a flashlight. Plaintiff left from the rear seat on the right (north) side of their car with the unlighted flashlight to give to Dennis. Plaintiff was walking or standing only a few feet to the north of their car and on the roadbed when the lights of defendant's car appeared from the railroad track and she was quickly struck.

According to plaintiff's evidence, the tail lights of the parked Adair car and the plaintiff were within the unobstructed view of the defendant when defendant reached a point 40′ east of the railroad track, or a point 105′ from the parked Adair car; that defendant did at no time sound his horn.

Defendant testified that he drove his car, equipped with chains, upon the railroad track from the east going west and traveling at a rate of speed of 15 to 20 miles an hour. As defendant started downgrade over the track the rear of the Adair's parked car was first seen by him. Defendant also testified that he immediately commenced braking his car and continued doing so; that his car narrowly passed to the right of the Adair car and remained on the roadbed; that defendant did not see plaintiff until defendant was about a half-car length from her. Defendant's car, after striking plaintiff, continued to travel about the length of the car (16′). Plaintiff was "knocked" 18′ past the point of impact.

Plaintiff contends that the trial court erred in sustaining defendant's demurrer to plaintiff's evidence; and further erred in finding plaintiff guilty of contributory negligence as a matter of law.

We shall consider these contentions in the above order.

Plaintiff urges, and we agree, that on the determination of a demurrer to the evidence, every fact which the evidence in the slightest degree tends to prove and all inferences and conclusions reasonably and logically drawn therefrom must be resolved in favor of the party against whom the motion or demurrer is directed. In Smittle v. Illingsworth, 373 P.2d 78, Okl.1962, we held:

> "All facts which the evidence tends to prove in the slightest degree, and all inferences or conclusions which may be reasonably and logically drawn therefrom, stand admitted by a demurrer to the evidence, and the trial *court cannot weigh conflicting evidence,* but must treat as withdrawn from his consideration all evidence which is most favorable to the demurrant." (emphasis ours)

Plaintiff's brief points out 47 O.S.A. (1961) 11–504, and cites Roberts v. Cain, Okl., 365 P.2d 1015. In examining the case now before us with the cited case in mind, we find that it is dispositive of the issue herein to be resolved. Plaintiff, in the cited case, had approached from an opposite direction a car parked off the roadway with its hood up. Plaintiff stopped his car directly opposite and off the roadway across from the parked car. Plaintiff walked from his car to the parked car to render assistance to its occupants. Plaintiff was struck by defendant's car in the roadway as he was walking back to his car. In the cited case we used this language:

> "[T]here was competent evidence that defendant had a clear and unobstructed view of the parked vehicles from the time he reached a point 700 to 800 feet north of same; that plaintiff was standing to the east of the station wagon and was therefore clearly visible; that notwithstanding defendant could and should have seen plaintiff, he did not see plaintiff until his automobile was approximately 50 feet north of plaintiff; that defendant (according to plaintiff's testimony) at no time sounded the horn to his automobile; that the horn (according to defendant's testi-

mony) was not sounded until defendant's vehicle was 50 feet from plaintiff.

"It was the jury's privilege to believe that the horn to defendant's automobile was not sounded and to conclude that said failure, together with defendant's admission that he did not see plaintiff until his automobile was 50 feet from plaintiff, showed negligence and a violation of Sec. 125.14 and that was the proximate cause of the accident. For that matter, if the jury had believed defendant's testimony that he sounded the horn before his automobile struck plaintiff, the jury, in our opinion, would nevertheless have been justified in concluding that defendant should have seen plaintiff long before he testified that he saw him and should have sounded the horn before it was sounded; that for said reason, defendant was negligent and that his negligence was the proximate cause of the accident."

In the case now under consideration, plaintiff's evidence with all permissible inferences and conclusions tended to prove that the defendant had an unobstructed view of the Adair car and the plaintiff at a point 40 feet east of the railroad track, and that the tail lights of the Adair car were burning; but that defendant failed to observe plaintiff and the peculiarly-positioned Adair car from a point 105 feet away. Whether defendant could or should have seen the Adair car and the plaintiff from that distance, and whether he could have stopped or sounded his horn clearly presented questions of fact for submission to the jury.

In Smittle v. Illingsworth, supra, we held:

"The essential elements of a cause of action based on negligence may be inferred from all the facts and circumstances, and where the circumstances are such as to remove the case from the realm of conjecture and place it within the sphere of legitimate and rational inferences from established facts, a prima facie case is made."

Defendant cites several cases which might be persuasive except for the evidence tending to show that the Adair car and plaintiff were within his unobstructed view for a distance of 105' prior to the impact.

Defendant theorizes and contends that the evidence in its most favorable light for the plaintiff shows that defendant did not and could not have seen the Adair car until defendant's car had crossed the tracks and started downgrade. With this we disagree for the reasons hereinbefore stated.

Plaintiff's second contention is that the trial court erred in finding plaintiff contributorily negligent as a matter of law. With this contention we agree.

The rule was stated in Breno v. Weaver, 208 Okl. 14, 252 P.2d 487, (1952) in which this Court held:

"In an action for damages based on negligence, a demurrer to the plaintiff's evidence presents no question as to the plaintiff's negligence. The sole question thereby presented is whether the evidence in any reasonable inference shows the defendant guilty of negligence, a proximate cause of the plaintiff's injury. By article 23, section 6, of the Constitution the jury is made the sole arbiter of the existence or non-existence of contributory negligence."

Under the record in this case the plaintiff's evidence in its most favored view for plaintiff was sufficient to disclose primary negligence on the part of defendant and the defense of contributory negligence becomes a question for the jury.

Reversed with instructions to grant plaintiff a new trial.

HALLEY, V. C. J., and WILLIAMS, JACKSON and IRWIN, JJ., concur.

BLACKBIRD, C. J., and DAVISON and JOHNSON, JJ., dissent.

DAVISON, Justice (dissenting).

I am unable to agree with the majority opinion. I am of the opinion that the trial

court was correct in sustaining defendant's demurrer to plaintiff's evidence.

All of the witnesses, including the defendant, were placed on the stand, by the plaintiff.

A review of the pertinent testimony shows that the action happened on the winter night of March 2, 1960, and at a time when it was snowing and when there was some four to six inches of snow or glazed ice on the highway. The width of the road bed was 16 feet and there was a bar ditch on each side of the road. The car in which the plaintiff was riding had been parked west of the track in the center of the roadway facing west and her rear bumper, according to all measurements, was 65 feet west of the railroad track mentioned in the majority opinion. Plaintiff's testimony, and that of the driver of the other car, Miss Jerry Adair, was to the effect that they didn't see the defendant's car until immediately before the accident and did not know the speed the defendant's car was traveling.

Plaintiff's witnesses, Don Mendenhall and C. H. Eaton, both officers, were at the scene of the accident very soon after its occurrence. Their testimony was both to the effect that the railroad track in question was raised and higher than on both the east and west side of the track. They both testified that it was impossible, because of the elevated condition of the track, for defendant to see plaintiff's car from the east side of the track; that in order for defendant's car to pick up any lights west of the track he would have to be on top of the track and start down the grade. The pictures, which were introduced in evidence, indicates that the testimony on this point was correct. These officers also testified that the defendant was driving not over 20 miles per hour as he approached the top of the track traveling west and at the time of the impact he was not going over from 3 to 5 miles per hour; that where plaintiff was picked up was a distance of some 18 feet from the place of impact and that she had been knocked some feet but rolled the balance of the 18 feet. The testimony further shows that the defendant's car was equipped with chains and that when he saw the plaintiff's car he did everything possible to stop his car while coming down this incline; that defendant did not see the plaintiff until about a half car's length before she was struck; that plaintiff had gotten out of the car to take a flash light to her nephew who was hunting for a rabbit he thought he had shot; that the defendant's car barely missed the plaintiff's car on the right. The plaintiff's car was approximately 7 feet from the edge of the road bed and defendant's car was some 6 feet in width so that at the time of the impact the defendant's car was almost in the bar ditch.

During the progress of the trial, on June 23, 1961, being some fifteen months after the date of the accident, the plaintiff recalled her witness, Jerry Adair, who testified that she went to the scene of the accident on the night of June 22, 1961, and for the evident purpose of impeaching the testimony of the two officers who had previously testified adversely to plaintiff. In her testimony on this occasion she stated that they performed an experiment at the scene of the accident and from this experiment she stated that her car, located in the same position as at the time of the accident, could be seen from a distance of forty feet east of the track. She further testified that the conditions were identical as at the time of the accident except that "it wasn't snowing."

The majority opinion is based on the experimental testimony of Jerry Adair to the effect that the tail lights of her car could be seen from a distance of forty feet east of the track. Assuming that this impeaching testimony should be considered and believed, we must conclude that the conditions were entirely different on the summer night of the experiment than on the winter, snowy, icy night of the accident. Let us assume, however, that the last testimony of Jerry Adair is correct, I still feel that the defendant, even if he could see, from the east of the tracks, tail lights in the center of the road on the west of the tracks,

he would have had the right to assume that the car was traveling and not stopped for a rabbit hunt.

In my opinion the proof of the plaintiff was insufficient to prove the defendant guilty of primary negligence.

In an action founded upon the law of negligence when the evidence in any permissive inference does not show a causal connection between the negligence charged and the injury, or that any such asserted negligence was the proximate cause of the injury, the action of the trial court in sustaining defendant's demurrer to the evidence was not error. Richardson v. Parker, 205 Okl. 137, 235 P.2d 940.

From all the facts and circumstances in the case I am of the opinion that the trial court was correct in sustaining the demurrer to plaintiff's evidence. I, therefore, respectfully dissent.

I am authorized to state that BLACKBIRD, C. J., concurs in my dissenting views.